## SISTO v. CIVIL AERONAUTICS BOARD.

### No. 10087.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 11, 1949.

Decided Dec. 19, 1949.

Mr. Karl Michelet, Washington, D. C., with whom Mr. Michael J. Keane, Jr., Washington, D. C., appeared on the brief for appellant.

Mr. O. D. Ozment, Attorney, Civil Aeronautics Board, Washington, D. C., with whom Assistant Attorney General, Herbert A. Bergson, Messrs. Edward Dumbauld, and William D. McFarlane, Special Assistants to the Attorney General, and Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, Washington, D. C., were on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

CLARK, Circuit Judge.

This is a petition to review the order of respondent, Civil Aeronautics Board[1] (hereinafter referred to as the "Board"), made pursuant to section 609 of the Civil Aeronautics Act, as amended[2] (hereinafter referred to as the "Act"), which revoked the pilot certificate with airline transport pilot rating of the petitioner, Charles R. Sisto, and provided that he should not thereafter be issued any pilot certificate or rating which would permit him to carry passengers for hire.

At the hearing from which the order now under consideration resulted, petitioner, although given an opportunity, failed to present any evidence in his own behalf and rested his case, relying on certain specific objections which we will discuss below. The examiner found against Sisto who thereupon assigned various errors to the proceedings and the examiner's report and requested oral argument before the Board. Two members heard the argument, and thereafter three of the members, in a unanimous decision, issued the order now complained of. The essence of petitioner's appeal is that he was denied a fair hearing in certain material respects.

The events out of which this proceeding arose involved an unexplained and sudden plunge of a commercial airliner while on a scheduled flight from Dallas, Texas, to Los Angeles, California. As a result of this near tragedy the Board instituted an investigation, and, because of the facts thus uncovered, a complaint was filed against petitioner wherein it was alleged that on or about October 8, 1947, Sisto, as captain in command of an American Airlines four engine Douglas DC-4, while on a scheduled flight, demonstrated a disregard for the principles of safety with respect to the operation of aircraft and a lack of discretion and good judgment necessary for the holder of an airman's certificate with airline transport pilot rating, in that he carelessly or recklessly operated said aircraft, endangering the lives and property of others, contrary to the provisions of section 60.102[3] of the Civil Air Regulations, by engaging and then disengaging the gust lock mechanism thereby causing the plane to perform half an outside loop. The complaint, after further alleging that he failed to keep his seat belt fastened, contrary to regulations, prayed that his airman's certificate with airline transport pilot rating be revoked or suspended.

Petitioner filed an answer which in effect amounted to a general denial and requested a hearing. On December 5, 1947, he received notice that the hearing would be held on December 17, 1947. But on or about December 12, 1947, another notice dated December 9, 1947, was received changing the date to December 19, 1947. In the same envelope was a further notice that a motion would be made to amend the complaint in four respects at the commencement of the hearing. This notice contained a general statement of the na-

1. Under Reorganization Plans III and IV, 5 U.S.C.A. following section 133t, which were issued by the President pursuant to the provisions of the Reorganization Act of 1939, 53 Stat. 561, 5 U.S.C.A. § 133 et seq., effective June 30, 1940, the name of the five member Civil Aeronautics Authority was changed to the Civil Aeronautics Board. Although various reassignments of functions as between the Board and the Administrator were made, the Board retained the power under section 609 to suspend and revoke pilot certificates after hearing.

2. 52 Stat. 1011, 49 U.S.C.A. § 559. This section provides in part that the Board "upon notice and hearing, may alter, amend, modify, or suspend, in whole or in part, any * * * airman certificate * * * if the interest of the public so requires, or may revoke, in whole or in part, any such certificate for any cause which, at the time of revocation, would justify the Administrator of Civil Aeronautics in refusing to issue to the holder of such certificate a like certificate."

3. 14 C.F.R. 60.12 (1949) (formerly 14 C.F.R. 60.102) provides: "No person shall operate an aircraft in a careless or reckless manner so as to endanger the life or property of others."

ture of the amendments.[4] Nothing further transpired until December 19, 1947, when the case came on to be heard, and the aforementioned motion to amend the complaint was made. Petitioner objected to the amendments on the ground that, although according to the respondent's regulations[5] he was entitled to have them at least fifteen days before hearings thereon, he had had only seven days' notice. He also objected on the ground that they were irrelevant and prejudicial. The amendments, however, were allowed. But only three of them, two setting out prior violations of regulations[6] and one alleging that petitioner failed to have the necessary medical certificate,[7] are complained of by Sisto.

4. The notice advised petitioner that the Administrator would move to amend as follows:
"(1) By striking the word 'piloted' in the first line of the second charge of the complaint and substituting in lieu thereof, the word 'operator';
"(2) To charge you with failure to have a currently-effective Medical Certificate on October 7, 1947, and for a period of six months prior thereto;
"(3) To bring to the attention of the Civil Aeronautics Board, the fact that your pilot certificate was revoked on April 26, 1935, and to request the Civil Aeronautics Board, in making its decision in this case, to take this fact into consideration; and
"(4) To bring to the attention of the Civil Aeronautics Board, the fact that your pilot certificate was, on July 26, 1931, suspended for a period of 45 days and to request the Board, in making its decision, to take this fact into consideration."

5. 14 C.F.R. 97.9 (1949), which provides: "Either party to the proceeding may amend his pleadings, as a matter of course, by serving a copy of such amended pleading on the adverse party and by filing with the Board at any time more than 15 days prior to the date of the hearing three copies of the amended pleadings. After that time, or in the event a hearing has been waived, amendment shall be allowed at the discretion of the examiner assigned to the case. In case of an amendment to any pleading, the examiner shall allow the party affected thereby a reasonable opportunity to reply thereto and to request a hearing thereon."

6. These two amendments read as follows: "Notice of Violation of Air Commerce Regulations by owner of person in command of aircraft involving revocation of license (Air Commerce Act of 1926, as amended).
TO: Charles R. Sisto, 815 Wellesley Avenue, Los Angeles, California. After full consideration of all the circumstances in connection with your violation of the Air Commerce Regulations, it is necessary to notify you that your transport pilot's license No. 15681 is revoked, effective as of April 13, 1935, in that you did on that date at Culver City, California, carry a passenger who was obviously under the influence of intoxicating liquor, and further that you did demonstrate carelessness, inattention to duty, and conducted yourself in a manner contrary to the public safety and interest and detrimental to the morale of pilots and mechanics by permitting a student pilot to carry a passenger who was obviously under the influence of intoxicating liquor in aircraft, license Number NC-9032, registered in your name.
Your rights in the denial, suspension or revocation of your license are set forth in section 3 (f) of the Air Commerce Act of 1926.
J. Carroll Cone,
Assistant Director (Regulations)
By: Denis Mulligan,
Chief, Enforcement Section"
"Dated April 26, 1935, at Washington, D. C. Copies to: Insp. J. S. Marriott, Accident Board. The other letter reads as follows: August 4, 1947, Mr. Charles Sisto, 816 Wellesley Avenue, Brentwood Heights, Los Angeles, California. Dear Sir: Report of your violation of the Air Traffic Rules on or about July 26th, 1931, at or near Santa Monica, California, —navigating aircraft over an open air assembly of persons at a height less than 1000 feet without the consent of the Secretary of Commerce, —has been entered upon your record and filed.
The suspension of your private pilot's license Number 15681 for a period of forty-five days (45) days, effective as of July 26, 1931, is hereby confirmed.
Yours very truly,
Filbert G. Budwig
Director of Air Regulations"

7. The third amendment charged:
"Between the period from March 21, 1947, to and including October 8, 1947, Defendant piloted certain civil aircraft and scheduled air carrier operations when not possessed of a valid medical certificate as required by section 21.400 and 43.402(c) of the Civil Air Regulations."

■ Petitioner argued before the Board and now urges here, as grounds for reversal, that the two amendments relating to his previous violations of safety rules should not have been admitted by the examiner because they were irrelevant and therefore their only purpose was to prejudice the examiner against petitioner. He also claims that, because of this prejudice he did not present his own case. This objection is based on a misconception of the nature of the hearing provided. It seems to be petitioner's idea that, because respondent's regulations provide for an assignment of errors to the examiner's proceedings and a review thereof by the Board,[8] all the requisites of a full hearing must be satisfied at the examiner's hearing. This is not the true concept. When there is an appeal to the Board, the findings, conclusions, and orders of the examiner are only tentative or interlocutory in nature.[9] And in such cases it is the orders of the Board which are final[10] and appealable.[11] Thus as long as the requirements of a full hearing are satisfied at some time prior to the issuance of a final order, there can be no complaint on that ground.[12] Therefore, the requirement that "no order shall issue except upon the consideration of the whole record * * * and as supported by and in accordance with reliable, probative and substantial evidence,"[13] must mean that where there is reliable, probative and substantial evidence, any findings, conclusions, and orders based thereon will be sustained even though unreliable, non-probative and unsubstantial evidence was allowed in by the examiner.[14] The admission of irrelevant or incompetent matter before an administrative agency does not constitute reversible error, if there is substantial evidence in the record to sustain the agency's determination.[15] This being the case prejudice cannot be alleged to the admission of improper evidence unless it be shown that the Board relied on it. Now these amendments of which the petitioner complains were evidentiary in nature. Their purpose was to give notice of the fact that the Administrator would request the Board to take official notice of such facts and to consider them in determining the action to be taken under section 609 of the Act.[16] But the Board itself in its findings, conclusions and orders took no notice thereof and in no way relied on them or even mentioned them. It found substantial grounds *aliunde* for supporting its order. Assuming, therefore, ar-

8. 14 C.F.R. 97.25 (1949); Administrative Procedure Act, sec. 8(a), 60 Stat. 242, 5 U.S.C.A. § 1007.

9. 14 C.F.R. 97.21 (k) (1949); Administrative Procedure Act, sec. 8 (a), 60 Stat. 242, 5 U.S.C.A. § 1007.

10. See Footnote 1, supra.

11. 52 Stat. 1024, 49 U.S.C.A. § 646; Administrative Procedure Act, sec. 10(c), 60 Stat. 243, 5 U.S.C.A. § 1009.

12. Administrative Procedure Act, sec. 8 (a), 60 Stat. 242, 5 U.S.C.A. § 1007, provides: " * * * On appeal from or review of the initial decisions of such officers the agency shall, except as it may limit the issues upon notice or by rule, have all the powers which it would have in making the initial decision." There is no notice or rule which limits the power of the Board in this respect.

13. 14 C.F.R. 97.20(d) (1949).

14. H.R.Rep.No.1908, 79th Cong., 2d Sess. (1946), states in its discussion of section 10(e) of the Administrative Procedure Act that " * * * a procedural omission which has been cured prior to the finality of the action involved by affording the party the procedure to which he was originally entitled is not reversible error." And in its discussion of section 7(c) it states: "Thus the mere admission of evidence is not to be taken as prejudicial error * * * although irrelevant, immaterial * * *."

15. Stanley Laboratories, Inc., et al. v. Federal Trade Commission, 9 Cir. 1943, 138 F.2d 388, 392; Hills Bros. v. Federal Trade Commission, 9 Cir.1926, 9 F.2d 481, 484; Arkansas Wholesale Grocer's Ass'n v. Federal Trade Commission, 8 Cir.1927, 18 F.2d 866, 871.

16. Letter to the Administrator from Welch Pogue, Chairman of the Civil Aeronautics Board, dated, June 25, 1943, which was read into the record.

*guendo,* that these amendments were improper and irrelevant, the petitioner still cannot predicate error on their admission. And even less can he claim prejudice when he cannot demonstrate it.[17] Since this is the case it is not necessary for us to consider the other errors assigned to the admission of these two amendments.

Petitioner also complains of the amendment, alleging that he failed to have the requisite medical certificate prior to and on the date of the accident,[18] on the ground that he received improper notice and was given no opportunity to reply thereto. Although he objected to its admissibility on the ground that he had received improper and inadequate notice, at no time during the course of the hearing did he request a continuance in order to answer the charges contained therein. He argues, however, that because the Civil Air Regulations provide that amendments may be made by either party as a matter of course at any time more than fifteen days prior to the date of the hearing, and that after that time amendment shall be allowed at the discretion of the examiner but that in such case the examiner shall allow the party affected thereby a reasonable opportunity to reply thereto and to request a hearing thereon,[19] it contemplates the furnishing of copies of substantial amendments more than fifteen days before taking evidence thereon in every case. A reading of the regulation clearly indicates that such was not contemplated, at least where the examiner is exercising his discretion in allowing them, as here. The regulation does not limit his discretion as to time by any express or implied provisions, and we cannot say from reading it that such was contemplated. Petitioner, however, says that even so the examiner should have allowed a reasonable time to reply in accordance with the regulation; but it is well settled that the granting of a continuance is a matter resting within the discretion of a court,[20] and no abuse thereof can be urged unless a request for a continuance is made.[21]

But even assuming, as petitioner maintains, that the statute requires the examiner to grant a continuance on his own motion in order to give a party an opportunity to reply to an amendment, such a requirement in the absence of a more specific mandate could only operate in a case where he felt that the complaining party should be allowed time. Such were not the facts here. At least a week before the hearing petitioner had notice that this amendment was to be made. If indeed it was inadequate as petitioner claims because it failed to state the regulations alleged to have been violated or to include the important date of October 8, 1947, he still cannot complain now because he failed to take advantage of his administrative remedy viz., make a motion for a more definite and certain statement.[22] There was no error in the admission of this amendment.

Further error is assigned in claiming that the findings are not supported by substantial evidence because there is no direct evidence that the petitioner *disengaged* the gust lock, as alleged in the complaint and stated in the Board's findings. Petitioner, however, admits that he engaged the gust lock, and it is the opinion of this court that the gist of the offense was the engaging, not the disengaging.

17. Eisler v. United States, 1948, 83 U.S. App.D.C. 315, 320, 170 F.2d 273, 278; Hurd v. Letts, 1945, 80 U.S.App.D.C. 233, 234, 152 F.2d 121, 122.

18. See Footnote 7, supra.

19. 14 C.F.R. 97.18 (1949).

20. Girard Trust Co. v. Amsterdam, 5 Cir.1942, 128 F.2d 376, 377; Harrah v. Morgenthau, 1937, 67 App.D.C. 119, 120, 89 F.2d 863, 864.

21. It is axiomatic that abuse of discretion cannot be urged where the lower court has neither exercised it nor been requested to do so.

22. 14 C.F.R. 97.6 (1949).

The gust lock is a device designed to lock the control surfaces of an aeroplane while it is on the ground in order to prevent damage from buffeting by the winds or other causes. It locks and holds the ailerons, elevators, and rudders in a neutral position thereby rendering it impossible to manipulate those surfaces. *Under no circumstances is it supposed to be used while the plane is in the air,* and for anyone to do so while the ship is in flight demonstrates a reckless disregard for the principles of safety and for the lives and property of others.

A narration of the instant accident can best illustrate what may happen when a gust lock is engaged while a plane is in flight.

The aircraft had started into a gradual climb. Beck, the trainee pilot, was at the controls being checked out on his first flight in this type of plane. Logan, the co-pilot, was in his seat. Sisto, who was captain in command, was in a jump seat just behind and to the right of the pilot's seat. Beck following normal procedure in such cases sought to compensate for the climb by adjusting the trim tabs.[23] These trim tabs operate in exactly the opposite way from the control surfaces, that is to say, when the pilot wants to bring the nose of the plane down he adjusts the trim tabs so they turn up. This in turn forces the main control surfaces down thus leveling off the ship. But the gust lock was engaged, and, therefore, they operated as auxiliary elevators, causing the plane to climb even more steeply, until the gust lock was disengaged and freedom of movement was restored to the control surfaces. As soon as this happened the trim tabs resumed their normal function, and the re-

sult was a sudden sharp nosing over of the aircraft and thereafter a precipitous dive earthward. Luckily, when the plane went into its dive, Beck and Sisto who did not have their seat belts fastened, on being thrown to the ceiling of the ship along with the forty-nine passengers and two stewardesses, struck the controls which feathered the propellors on three engines thereby reducing the power of the dive so that Logan whose seat belt was securely fastened was able to bring the plane under control after a drop of several thousand feet.[24]

Obviously, it is immaterial to the offense charged that the gust lock might have been disengaged by someone other than the petitioner. Any reasonable man under similar circumstances, on discovering that the gust lock was engaged while the plane was in flight, would immediately disengage it. That is a foreseeable factor and not an efficient intervening cause which would relieve petitioner from the consequences of his act.[25] The proximate cause of the accident was the engaging of the gust lock. Therefore, it is not necessary for this court to discuss whether or not there was substantial evidence to support the finding that Sisto disengaged it. It is immaterial whether or not he did so. The allegation in the complaint and the finding of fact in this respect are unnecessary to the ultimate conclusion that Sisto lacked the requisite discretion to hold a pilot's certificate, and we hold that even if the record was in fact devoid of any evidence on the matter, it is harmless error.[26]

Finally petitioner contends that the order of the Board is void for lack of jurisdiction due to the fact that a statutory quorum did not hear oral argument. The

23. Trim tabs are small auxiliary control surfaces on the ailerons, elevators, and rudders.

24. Logan finally pulled the aircraft up at 500 feet.

25. S. S. Kresge Co. v. Kenney, 1936, 66 App.D.C. 274, 86 F.2d 651; Le Foe v. Corby Co., 1912, 38 App.D.C. 54.

26. Pursuant to respondent's regulations, 14 C.F.R. 97.24 (1949), the Federal Rules of Civil Procedure, 28 U.S.C.A., govern in situations not otherwise provided for. Therefore, Rule 61 of the Federal Rules of Civil Procedure will govern here. Brown v. Prince, 10 Cir. 1947, 161 F.2d 537; Theater Realty Co. v. Aronberg-Fried Co., 8 Cir.1936, 85 F.2d 383.

statute provides that "three members shall constitute a quorum of the Board." [27] It further provides that " * * * In all cases heard by an examiner or a single member the Board shall hear or receive argument on request of either party." [28] Only two members were present at oral argument, a fact which was brought to petitioner's attention at the time but to which no objection was made. Petitioner now argues that the word "hear" means that in order that the quorum requirement be satisfied. there must be actual presence of at least three members at the presentation of oral argument when it is requested. He further argues that the word "receive" applies only to those arguments which are submitted on brief where no oral discussion is requested. We do not so construe the Act. In the plain words of the statute the Board may "hear *or* receive" argument. This does not bind them to do it in any particular manner. They may do it in either one of the two ways stated, viz., hear it or receive it. If a quorum does not hear, the quorum requirement may still be met by having the requisite additional number receive. The record demonstrates that this is exactly what was done in this case before final decision was made. A quorum either heard or received argument either by being physically present or by reading the record and transcript. The statutory requirement was satisfied. Petitioner cannot complain of this practice.[29]

A careful reading of the record brings us to the conclusion that petitioner was afforded a full and fair hearing. There is no evidence on his behalf in the record. If he had an explanation he should have made it. He did not, and the record as it now stands presents a clear case for support of the administrative action taken.

Petition dismissed.

Circuit Judge PRETTYMAN concurs in the result.

27. 52 Stat. 980, 49 U.S.C.A. § 421 (d).

28. 52 Stat. 1021, 49 U.S.C.A. § 644 (a).

29. Semble, Eastland Co. v. Federal Communications Commission, 1937, 67 App.

D.C. 316, 92 F.2d 467; certiorari denied 302 U.S. 735, 58 S.Ct. 120, 82 L.Ed. 568.