**Boris S. NADIAK, Appellant,**

v.

**CIVIL AERONAUTICS BOARD and Najeeb E. Halaby, Administrator of the Federal Aviation Agency, Appellees.**

No. 19136.

United States Court of Appeals
Fifth Circuit.

July 6, 1962.

Rehearing Denied Aug. 8, 1962.

A. Jay Cristol, Miami, Fla., for appellant.

John H. Wanner, Gen. Counsel, O. D. Ozment, Associate Gen. Counsel, Arthur R. Schor, Atty., Civil Aeronautics Bd., James D. Hill, Associate Gen. Counsel, William Anderson, Atty., Federal Aviation Agency, Lee Loevinger, Asst. Atty. Gen., Richard A. Solomon, Atty., Dept. of Justice, Daggett H. Howard, Gen. Counsel, Federal Aviation Agency, for appellees.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This case presents the basic question of whether the proceedings relating to the grounding of a commercial airline pilot were procedurally correct. After a careful reading of every word of 1234 typewritten foolscap pages, plus 40-odd documentary exhibits, we are convinced that they were, and affirm the decision of the Civil Aeronautics Board (CAB).

There is no doubt regarding the technical proficiency of this pilot. He has flown for more than 20 years—almost 15,000 hours—and during that time he has never had an accident which damaged an aircraft or injured a passenger. He has held almost every possible certificate from the FAA, and has been employed in scheduled air transportation for over 12 years as the holder of an Airline Transport Pilot Certificate. He has never failed a flight check, nor even received an unsatisfactory grade. But his technical proficiency is not in issue here—nor was it below. The Administrator's emergency revocation of Nadiak's Airman Certificate was based on a lack of the necessary judgment and responsibility.

On July 22, 1960, the Administrator proposed to suspend Nadiak's Airline Transport Certificate for 60 days and to issue in its place a temporary Commercial Pilot Certificate. This proposed minor-wing-clipping was because of a reported incident on March 15, 1960, of his having flown too close to another aircraft in violation of certain Civil Aeronautics Regulations. His resistance to this order and his appeal to the Civil Aeronautics Board precipitated a full scale investigation, which took over 8 months to complete, covering several thousand miles and brought into review 12 years of Nadiak's professional career. The result was an emergency order on January 12, 1961, by the Administrator. This completely grounded Nadiak by revoking all of his certificates.[1] After a

1. This emergency order is authorized by § 609 of the Federal Aviation Act of 1958, 49 U.S.C.A. § 1429. The effect of the

Administrator's determination that an emergency exists is to give immediate effectiveness to his order. Because of the

full hearing by an Examiner, the CAB affirmed the Administrator's action, and the present Petition for Review followed.

■ We feel it important to state at the outset that while we affirm the order in this case, we join with the CAB in registering our disapproval of one aspect of the practice followed in this proceeding. While we conclude without any reservation whatsoever that no prejudicial harm to Nadiak occurred as a result of it, the blunderbuss nature of the charges is the sole thing which gave us any real concern. We combed every page of this record to make sure that the decision was not infected by this practice. Considering the awesome nature of the Administrator's power when invoked in an emergency proceeding, we think that the FAA should be more selective than it was here in the specification of charges. What we have particular reference to is the bringing of some 23 charges, many of which are vague and trivial, in a proceeding of this nature when time for investigation and preparation of defenses is necessarily limited by the statutory timetable. For example, one of the charges brought three years later in 1961 stated that "On or about April 18, 1958, [Nadiak] * * * reported for duty * * * two minutes prior to scheduled departure time * * *." Another charged him with "carrying a case of beer under his arm * * * on several occasions in 1956 * * *." Still another, presumably relating to his qualification to hold an Airman's Certificate, stated that "On or about May 23, 1956, [Nadiak] * * * pushed [a power mower] across the ramp at Miami, Florida."

■■ While we fully appreciate the zealousness of the Administrator in carrying out his assigned responsibilities of promoting safety in the air lanes and the practical problems in doing so within limited time schedules, fundamental notions of fair play dictate that one called upon to defend truly serious charges in an emergency proceeding ought not to have adjudication of such substantial matters exposed to the possibility of inflammatory contamination by stale or trivial incidents. We find ourselves in full agreement with the CAB when, after ruling on the five and only major charges, it made a "general observation concerning the nature of the remaining charges in the Administrator's complaint, none of which, * * * are pertinent to our disposition of this proceeding." Thus, continued the CAB, "Our examination of them indicates that many appear trivial and some are ambiguous as to the date upon which the incident is alleged to have taken place. We fail to see what useful purpose is served in an emergency proceeding such as this by the inclusion of trivial and ill-defined charges, and such action can only serve to clutter the record with evidence directed toward establishing, refuting, or explaining them."

To this we would only add the caveat that avoidance of the practice is more than a janitorial necessity to prevent cluttering up a record. Sandbagging a pilot with a whole mass of old, trivial, petty or insubstantial charges may adversely affect fundamental rights. Serious charges are to be seriously tried as serious charges. The CAB, in its role of the tribunal adjudicating charges filed by

peremptory nature of such an order, an immediate appeal to the CAB by the aggrieved person is permitted. The appeal must be finally disposed of by that Board within 60 days.

The order in this case provided that Nadiak could make application for another Pilot Certificate after one year from the date of the order. As the one-year period has now elapsed, there is every reason to assume that the Administrator will fully comply with its obligation to afford

proper and fair consideration to any such application by Nadiak. Nothing we say or imply is to be construed as an opposition to such post-suspension relief. Indeed, since it is public safety, and not punishment, which undergirds the whole statutory scheme and the disciplinary proceeding, restoration of certification, complete or partial, is a legitimate concern in the exercise of the expert judgment of the Administrator.

the Administrator, must, as would a Court in relation to the prosecution, see that charges fairly meet the demands of our fundamental concepts of a fair trial.

Without translating it specifically into any particular claim of error by CAB, Nadiak stresses that he was one of the few remaining "scab" pilots at National Airlines, and that almost all evidence against him was presented by Union members. Even though many witnesses testified that he was an "unpopular" pilot, no evidence was admitted which would require a reversal on this ground. At one time there were approximately 100 nonunion pilots employed by National. Many of these, including Nadiak, incurred the wrath of the Union pilots by flying during the strike against National in 1948. Since that time, their number has dwindled to less than 20. But with these facts standing alone, we are unable to perceive just what Nadiak's counsel would have us do. With proper enthusiasm he sought to impeach adverse witnesses by showing a conscious effort by the Union and its members to "first ground [Nadiak] and then drive [him] from the air lanes altogether," Flight Engineers, etc. v. American Airlines, Inc., 5 Cir., 1962, 303 F.2d 5. But the CAB may well have thought this effort backfired. Typical of such testimony was the cross examination by Nadiak's counsel of one of the Union copilots.

"Q. Were you aware of [Nadiak's] activities during the National strike about ten years ago?

"A. I am aware that he is a non-ALPA member, a nonunion pilot, yes.

"Q. Do you like that?

"A. The best way I can answer that question is either yea or nay for this reason, that during that winter period the majority of Captains flying out of the New York base were non-ALPA pilots, and I could show my flight log to show that 90% of the pilots I flew with were nonunion pilots. The fact that Captain Nadiak was nonunion had no bearing whatsoever."

■ Of this we can only say at this point that while credibility choices were available to the Examiner, they are not open to us. We must take the record as we find it. Whether, as the CAB found, the contention of Union-induced hostility toward Nadiak would merely "go to the question of motivation rather than to the factual accuracy of the testimony rendered," or would destroy altogether the credibility of the Union witnesses, was a matter confided to the trier of fact.

■■ Turning now to the assigned errors, we find the usual one on review of administrative action— that the order is not supported by substantial evidence. But even reducing the matter to the only five major charges which the CAB sustained, the amount of evidence to support these is staggering. Admittedly, there was conflicting evidence on almost every charge, but our function is not to weigh the evidence to determine who should win the swearing match. The function of a reviewing Court is to accept the findings of fact made by the administrative body if there is substantial evidence in the record considered as a whole to support those findings. Federal Aviation Act, § 1006(e), 49 U.S.C.A. § 1486(e); 5 U. S.C.A. § 1009(e); cf. N.L.R.B. v. Walton Manufacturing Co., 1962, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829; N.L.R.B. v. Ferguson, 5 Cir., 1958, 257 F.2d 88, 90; Specht v. Civil Aeronautics Board, 8 Cir., 1958, 254 F.2d 905, 913, 78 A.L. R.2d 1135. Here there is ample evidence.

The next contention is that the sanction is too severe. Under the order the pilot was completely grounded. Nadiak's contention is that even accepting the entire mass of adverse evidence as true, it goes only to show that Nadiak is not qualified to be a pilot in command of an airplane carrying passengers. It does not, the argument continues, show that, for example, he would not be a qualified copilot, or pilot of a lesser rating. But with that, the Administrator, several experts, the Examiner, and the CAB as a matter of aeronautical expertness disagreed. Nadiak on abundant evidence was found to have (1) passed too close

to another aircraft and violated regulations specifying procedure to follow in overtaking other airplanes, (2) violated an airport traffic pattern by turning right after a take-off and his company's safety rules by taking off with an excessive tail wind, (3) landed his aircraft at a time when the ceiling was below prescribed minimums, (4) deviated from flight clearances without obtaining amended clearances, and (5) violated other regulations by flying through and in close proximity to clouds while operating under VFR (Visual Flight Rules).

Though we do not have the benefit of the technical background of the two expert agencies charged with promoting safety in the air lanes, we know enough to see that the agency could properly regard these charges as quite serious. Such practices would endanger not only the aircraft piloted, along with its passengers, but other people, aircraft and property as well. More than that, what was at issue was Nadiak's judgment and responsible use of it while in the air. The law is fortunately sensible enough to recognize that in a highly technical area the evaluation of action and appropriate disciplinary sanction necessarily requires that the agency be vested with a wide range of discretion in the imposition of penalties. Walker v. C. A. B., 2 Cir., 1958, 251 F.2d 954. Our review of the sanction imposed is confined to the inquiry of whether there was an abuse of discretion. We find no such abuse here. Cf. Garber v. C. A. B., 2 Cir., 1960, 276 F.2d 321; Specht v. C. A. B., 8 Cir., 1958, 254 F.2d .905, 78 A.L.R. 2d 1135; Sisto v. C. A. B., 1949, 86 U.S. App.D.C. 31, 179 F.2d 47; Carey v. C. A. B., 1 Cir., 1960, 275 F.2d 518, 522. And if this seems now or later to be too harsh, amelioration may be sought by Nadiak's making application for a certificate upon the expiration of one year from the date of the order. See note 1, supra.

The last group of assigned errors charged that the Examiner made numerous errors in his rulings during the course of the hearing. These are that the Examiner erroneously (1) failed to dismiss the complaint because the complete administrative file was not produced,[2] (2) did not require the production of certain tangible evidence, and (3) allowed Nadiak to be unduly prejudiced by the admission of hearsay evidence.

Taking these rulings in reverse order, we find no merit in the complaints about hearsay. Upon a careful review of the entire record, we find that most of the evidence admitted over objection was not subject to the hearsay exclusion anyway. In other words, under the traditional rules of evidence, the evidence was admissible. But if as to some of these isolated bits of evidence the traditional rules would have excluded the questioned evidence, its admission does not constitute error requiring reversal of this case because the technical rules of evidence that govern procedures in the courts are not necessarily applicable to administrative proceedings, Administrative Procedure Act, § 7(c), 5 U.S.C.A. § 1006(c); Falsone v. United States, 5 Cir., 1953, 205 F.2d 734, 742, n. 14, cert. den. 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375; 1 Wigmore, Evidence § 4c at 47–48. Furthermore, even if the evidence in question were excluded, there would still be substantial evidence to sustain the findings. Sisto v. C. A. B., 1949, 86 U.S.App.D.C. 31, 179 F.2d 47, 51. That would reduce it then to a question whether its erroneous admission infected the proceedings or critical fact findings. There is no basis for any such conclusion here.

The assigned error of not producing certain tangible evidence borders on the frivolous. Early in the proceedings, Nadiak filed an Application for Production of Documentary and Tangible Evidence. We find it unnecessary to rule on the duty of the agency to produce under such circumstances because the next day the FAA responded with a

2. At oral argument, Nadiak's counsel stated that the case should turn on this point.

letter enclosing much of the requested data, telling how other parts of it could be obtained, and explaining that the remainder was not available as it had been routinely destroyed before the institution of the investigation into Nadiak's flight safety practices. In short the FAA produced all they had of the requested material. No more could be required.

Lastly—and from his viewpoint most important (see note 2, supra)—Nadiak asserts that the order should be reversed because of the failure of the Administrator to produce his entire file before the Examiner and CAB. This, he says, is because the file "would add measurably to the evidence showing qualification." This rests upon his contention that proceedings before the CAB are appellate in nature and that their decision should be based upon the record as a whole. Reliance is placed on the fact that § 609, 49 U.S.C.A. § 1429, provides for "an appeal" to the Board. How proceedings lasting over a week with a parade of witnesses being examined and cross examined can be called appellate in nature escapes us. Section 609 certainly does not sustain it. For that same section provides that the Board is not bound by the Administrator's findings of facts, and the Rules of Practice place the burden of proof upon the Administrator.[3]

But we do not quibble over nomenclature. As near as we can understand it,[4] the asserted error comes down to this. The Examiner and the Board should have received—and therefore read—the whole investigatory file of the Administrator. This, he claimed, would have revealed material that "would add measurably to the evidence showing [Nadiak's] qualification."

This was not sought for discovery. Nor was it a demand from time to time for a Jencks-like look at a particular witness' prior written statement. It was, rather, a broad contention that the whole file should somehow become a part of the record to give the Board and the "Examiner the opportunity to review those many findings of investigation * * * in favor of [Nadiak] * * *" without which "the Examiner cannot make a fair determination * * *."

But this would destroy the whole structure so carefully designed by Congress to separate completely the inquisitorial functions from the adjudicatory function.[5] This would be to surrender the long and hard-fought gains of the Administrative Procedure Act. See especially §§ 5(c), 7(d), 5 U.S.C.A. §§ 1004 (c), 1006(d). Riss & Co., Inc. v. United States, 1951, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345, reversing D.C., 96 F.Supp. 452; Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L. Ed. 616. And since the public has a big stake in these proceedings, the Board was not required to acquiesce in the beguiling importunities that this undisclosed material coming from unspecified persons and acquired under unrevealed circumstances would somehow "help him." The Board was expected to pass on these serious charges by a proceeding which would in all vital respects give the Administrator and respondent a fair chance to meet and test evidence offered for and against the complaint. It is the considered judgment of Congress that the interest of neither the public nor the person under charge is adequately cared for if the adjudicatory tribunal is to have access to the ex parte partisan views of the investigatory-prosecutorial staff or to the material assembled by their efforts. T.S.C. Motor Freight Lines, Inc. v. United States, S.D.Tex., 1960, 186 F.Supp.

---

3. 14 CFR § 301.32(b).

4. This point, and just what Nadiak's contentions were with respect to it, was the subject of painstaking inquiry on the oral argument. We have viewed it from every angle remotely suggested by him.

5. This approach was specifically followed in the overhaul and marked changes in national air regulatory statutes. See Legislative History on Federal Aviation Act of 1958, expressly adopting the standards of the Administrative Procedure Act, 1958 U.S.Code Cong. & Adm.News, pp. 3741, 3747–3748.

777, 790. The wish of a particular pilot that this fundamental principle be relaxed did not make the Board's rejection of it an error.

The public—including judges who fly—has a vital interest in air safety. Responsibility for air safety has been placed in the administrative hands of those deemed by Congress to have an expert competence. Air safety was of primary importance in the adjudication of this case. The determination was that air safety would be promoted by the certificate revocation. After permissible credibility choices, the findings were that numerous regulations and rules of the air lanes—which must not be ignored or taken lightly—had been violated. Those findings were supported by substantial evidence in a hearing which was fair and regular. There it ends.

Affirmed.