Vernon V. HUMBLES, Petitioner,

v.

**DISTRICT OF COLUMBIA HACKERS' LICENSE APPEAL BOARD, Respondent.**

No. 83–910.

District of Columbia Court of Appeals.

Argued June 7, 1984.
Decided Dec. 4, 1984.

Weldon M. Blake, Washington, D.C., for petitioner.

Karen J. Krueger, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before NEBEKER and TERRY, Associate Judges, and YEAGLEY, Associate Judge, Retired.

TERRY, Associate Judge:

Petitioner, a taxicab driver, seeks review of a decision by the Hackers' License Appeal Board fining him $300 for violations of the Board's regulations. We find no merit in his arguments and affirm the decision of the Board.

## I

In April 1983 Lavinia Nolan filed a complaint about petitioner with the District of Columbia Department of Transportation. Her complaint stated that while she was riding in petitioner's cab, she and petitioner became embroiled in a dispute over the most direct route to her destination. She alleged that he had verbally abused her with obscene racist slurs and then ordered her out of his cab. After a further dispute as to where he would oust her, he stopped half a block from a police station on Benning Road and again ordered her out of the cab with obscene and racist language. When Miss Nolan refused to get out, petitioner turned toward her and threatened to hit her. She quickly reached into a bag she was carrying and grabbed a can of beer to protect herself. Petitioner then jumped from the front seat and pulled her out of the cab, all the while continuing to call her vulgar names. As she tried to hail another cab, petitioner drove off.

Several weeks later the Board summoned petitioner to appear before it and to show cause why he should not be fined or his license suspended for violating applicable regulations in his encounter with Miss Nolan.[1] The Board also summoned him to appear at the same time on similar charges filed by a woman named Libby Wise. On the date of the hearing Miss Wise did not appear, and the Board dismissed her complaint. Miss Nolan did attend, however, and the hearing proceeded on her allegations.

Miss Nolan began her testimony by identifying petitioner as the driver against whom she had filed her complaint. She then read her complaint letter into the record. Petitioner admitted in his testimony that harsh words had been exchanged between himself and Miss Nolan, but he denied reaching back to strike her and denied getting out of the cab to pull her out of the back seat. He did acknowledge that he asked her to leave the cab, but he said that she jumped out when he turned the cab around to take her back to the corner where he had picked her up. He also disputed Miss Nolan's assertions that she had paid him the $3.20 fare at the outset of the ride, and that she left her six-pack of beer in the cab. Petitioner maintained that he had refused to take Miss Nolan to her

---

1. 15 DCMR § 350.3 provides:

    The operation of taxicabs shall be conducted in accordance with the laws of the District of Columbia and with due regard for the safety, comfort and convenience of passengers, for the safe and careful transportation of property, and for the safety of the general public. All reasonable efforts shall be made to promote such safety at all times and under all conditions.

15 DCMR § 350.7 provides in pertinent part:

    No driver of a taxicab shall refuse to transport a passenger while holding his taxicab forth for hire.

Petitioner was charged with violating these two regulations.

destination only after concluding that he could not transport her safely.

Under questioning by the Board, petitioner conceded that he was not familiar with the area of Miss Nolan's destination, and that he "may have had some difficulty in finding the address." Asked why he did not take her all the way to the police station as she had requested, petitioner replied that he "was just infuriated.... [S]he just kept on yackity, yackity, yack and I said, 'Get the hell out.'" He asserted that Miss Nolan's account of the dialogue omitted several of her own comments.

A discussion followed concerning the route that petitioner took. He reiterated his unfamiliarity with the area and his frequent dependence on passengers to guide him, and expressed his resentment toward those who chose to criticize him instead. Sometimes, he admitted, he would respond to such criticism by telling the passenger to leave the cab. But he insisted that he never turned down fares, and later maintained that although he had had disagreements with passengers before, he had never thrown one out of his cab.

At the end of the hearing, the Board announced that it was sustaining the charges against petitioner. About three weeks later the Board issued its opinion, finding that petitioner had failed to take the shortest route to Miss Nolan's destination, that his failure had led to an argument, that he had used profane language and ordered Miss Nolan out of the cab, and that when she refused to get out, he jumped out and physically removed her from the cab, calling her "a black bitch."[2] The Board concluded that petitioner's conduct violated 15 DCMR §§ 350.3 and 350.7 and fined him $300.

Petitioner's main argument before this court is that the Board may have confused Miss Nolan's complaint with those of Libby Wise and Deborah Christian, another complainant who chose not to follow through with a hearing. He points to the presence of the Wise and Christian complaints in the record and suggests that his testimony may have been impeached by evidence which he had no chance to confront. Further, petitioner alleges that as an indirect result of the Board's decision, he is now without a license. After his temporary license expired on August 31, 1983, the Department of Transportation denied his application for a new permanent license on the ground that he had not yet paid the $300 fine imposed on him in this case.[3] Petitioner contends that the refusal to renew his license is reviewable in this proceeding because it is causally related to the Board's sanction. Further, he maintains that the denial of the permanent license amounts to a taking of his property without due process of law.

## II

Quite correctly, petitioner recognizes that the Board was faced with a choice between his word and that of Miss Nolan. He does not contend that the Board's findings are without evidentiary support. Rather, he argues that the presence of the Wise and Christian complaints in the record could have led the Board to believe Miss Nolan not on the basis of her own testimony, but instead by allowing the two dormant complaints to impeach his testimony, in violation of his right to due process of law. To resolve any doubt about the matter, he maintains, we must reverse the decision of the Board and remand the case for a new hearing.

■ There can be no question that the other two complaints were irrelevant to the instant case; indeed, the Board does not contend otherwise. But their presence in

2. The fact that petitioner is also black, as the record reflects, cannot in any way excuse his use of such language.

3. Sometime in 1983 petitioner lost his license, which was valid until 1985. When he applied for a duplicate, the Department issued him a temporary license with an expiration date of August 31, 1983.

the record does not make the Board's decision invalid.

> The admission of irrelevant or incompetent matter before an administrative agency does not constitute reversible error, if there is substantial evidence in the record to sustain the agency's determination. This being the case prejudice cannot be alleged to the admission of improper evidence unless it be shown that the [agency] relied on it.

*Sisto v. CAB,* 86 U.S.App.D.C. 31, 35, 179 F.2d 47, 51 (1949) (footnote omitted). There is absolutely no indication in the record that the Board even looked at the Wise and Christian complaints, let alone relied upon them, in reaching its decision to fine petitioner. If anything, the leniency of the sanction which the Board imposed suggests that the Board gave petitioner the benefit of any doubt it might have had.[4] We are required to indulge "[t]he presumption of regularity [which] supports the official acts of public officers and, in the absence of clear evidence to the contrary, [we must] presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926) (citations omitted). In this case there is no evidence whatever, let alone "clear evidence," that the Board acted improperly. Since petitioner does not challenge the substantiality of the evidence supporting the Board's findings, the presence of the two other complaints in the record is of no consequence.

### III

■ Petitioner contends that the refusal of the Department of Transportation to renew his license pending his payment of the $300 fine constitutes a taking of property without due process of law. We reject this contention because the Department's ruling is clearly beyond the scope of our review in this case.

---

**4.** The Board would surely have been justified in suspending petitioner's license for his abuse of

The denial of the license renewal application was not a sanction imposed by the Board; rather, it was the incidental result of the sanction actually imposed, petitioner's ill fortune in losing his original license, and the Department's policy of not issuing licenses to those in arrears to it. This court's review is "upon the exclusive record for decision" before the Board. D.C. Code § 1–1510(a) (1981); *see Dietrich v. District of Columbia Board of Zoning Adjustment,* 320 A.2d 282, 287 (D.C.1974). That "exclusive record" consists of "[t]he testimony and exhibits, together with all papers and requests filed in the proceeding, and all material facts not appearing in the evidence but with respect to which official notice is taken." D.C.Code § 1–1509(c) (1981). The denial of petitioner's license application is manifestly not a part of the exclusive record in this case, and therefore we cannot consider it.

*Affirmed.*

---

Miss Nolan. He was lucky to get off with only a fine.