STAHL, Circuit Judge.
Petitioner Thomas D. Hite (“Hite”) appeals the National Transportation Safety Board’s (“NTSB”) decision to uphold an Administrative Law Judge’s (“ALJ”) affir-mance of the Federal Aviation Administration’s (“FAA”) revocation of his airman certificate. Our jurisdiction is premised on 49 U.S.C. App. § 1429(a). Finding Hite’s appellate arguments without merit, we affirm.
Background[1]
On February 4, 1989, Hite was the pilot of a Spectrum Airlines charter flight from Hyannis to Nantucket, Massachusetts. Aboard the charter were Hyannis High School basketball players and their coach, travelling to a game in Nantucket. Shortly after takeoff, the plane (a Cessna 402B), experienced control difficulty. The nose of the plane suddenly rose, bringing the aircraft to a nearly vertical position. Hite regained control of the plane and returned to Hyannis without further incident.
The FAA Administrator (“the Administrator”) charged that the above incident was due to Hite’s misfeasance. In an order dated June 23, 1989, the Administrator revoked Hite's airman's (pilot's) certificate after determining that Hite had violated numerous Federal Aviation Regulations (“FAR”).[2] Hite appealed the revocation order to the Board. 49 U.S.C. App. § 1429(a).
*19 A hearing before ALJ Coffman was held in Boston on February 8-9, 1990. The Administrator presented testimony from two passengers, a Hyannis Airport air traffic controller, an aircraft mechanic who examined the plane after the incident, and a FAA aviation safety inspector. In addition, the Administrator presented 38 evi-dentiary exhibits, including statements by passengers, parts of the aircraft, and documents concerning the weight and balance of the aircraft. Petitioner testified, and introduced testimony from Spectrum Aviation’s director of maintenance and Nantucket station agent, as well as two Spectrum pilots, one of whom was near petitioner’s plane at the time of the incident, and a FAA aviation safety inspector who once worked for Spectrum.
Testimony indicated that it is critical to the stability of a Cessna 402B that the weight of passengers and baggage be towards the front of the plane. Passengers testified that in past flights they were routinely asked to provide their weights, were given assigned seats based on their weights, and gave their luggage to airline personnel to load in the plane’s nose compartment. Prior to the flight in question, however, nobody compiled the passengers’ weights, at Hite’s direction baggage was loaded in the rear of the plane’s passenger section, and passengers were not assigned seats.
After the passengers were seated, as Hite was boarding, the plane tilted backward, causing the tail section to strike the tarmac. Hite and three passengers got off the plane, allowing it to level off again. Hite examined the plane, and then reboard-ed with the three passengers. At no time did he reassign anybody’s seat.
The Hyannis air traffic controller testified that he noticéd the plane having difficulty ascending, and thought that it would not clear 50-foot tall trees located 5000 feet from the end of the runway. A team member testified that about ten seconds after takeoff, with the plane at an altitude of 200 to 400 feet, the plane’s nose tilted steeply upward at an angle of 45 degrees or more. He then saw a red light illuminate and heard a buzzer, followed by Hite shouting an expletive and ordering everyone in the plane to move forward. Everyone complied, with those seated in the rear “sardined up in the front.” Meanwhile, as the plane tilted back, Hite was having trouble with the controls, which appeared to be stuck. After the passenger movement, the plane levelled off and Hite, without further incident, returned to the Hyannis airport. According to another witness, Hite said after the flight that the passengers survived only because their youth and agility enabled them to quickly move to the front of the plane. Had they been older, Hite said, according to the testimony, they would not have survived. Hite doesn’t dispute the magnitude of the situation. Indeed, his appellate brief suggests that he should “have gotten a medal” for his handling of the situation.
The Administrator’s expert testified that the plane struck the ground because Hite overloaded the plane and improperly distributed the weight of the passengers and baggage. Further testimony indicated that the plane’s striking the ground bent a piece of the internal frame of the tail, which in turn caused damage to the plane’s elevator control, which would affect the plane’s ability to move up and down in flight.[3]
At the conclusion of the two-day hearing, the AU issued an oral decision and order, affirming the Administrator’s revocation order. Pursuant to 49 U.S.C. App. § 1429(a) and 49 C.F.R. § 821.47, petitioner appealed the AU’s decision to the full Board. After both parties submitted briefs, the Board, on August 25, 1992, issued a written opinion and order affirming the orders of the AU and FAA. This appeal followed.
Discussion
Petitioner raises two arguments on appeal, neither of which merits more than *20 brevis discussion. First, he argues that the FAA has revoked his certificate for punitive purposes, in contravention of Board decisions that countenance revocation only when a certificate holder’s actions indicate a lack of qualifications necessary for certification. He supports this argument by relying on a FAA internal handbook that was superseded in 1988. The relevant handbook unequivocally states that “[Revocation of a certificate is used as a remedial measure, when the certificate holder lacks the necessary qualifications to hold the certificate.” Handbook for Handling Legal Aspects of FAA Enforcement Program, FAA Order 2150.3A at ¶1206(b) (Dec. 14, 1988). Paragraph 206(b)(1) indicates that “[Revocation is appropriate whenever the certificate holder demonstrates a lack of care, judgment and responsibility required of the holder of such a certificate.” Examined in this light, Hite’s argument obviously fails.
Hite also argues for greater consideration of his otherwise stellar record. The Board, however, has consistently held that “conduct on a single flight, generally in the form of recklessness or gross (or extreme) carelessness, is considered sufficiently egregious to demonstrate a lack of qualifications.” Administrator v. Wingo, 4 N.T.S.B. 1304, 1305 (1984). Moreover, the “Board is not constrained to impose serious sanctions on pilots only when tragedy occurs. Congress has delegated to the agency wide discretion to take reasonable action to avert preventable tragedies.” Johnson v. National Transp. Safety Bd., 979 F.2d 618, 623 (7th Cir.1992).
Under our very narrow standard of review, we must uphold the Board’s decision if it is not “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A). Moreover, “the strong policy concern for public safety requires that the Board be given a wide range of discretion in imposing sanctions.” Johnson, 979 F.2d at 622. Given the danger into which Hite placed his passengers, we cannot say that it was an abuse of discretion to conclude that this incident demonstrated Hite’s lack of care, judgment, or responsibility to hold an airman’s certificate.[4]
Hite’s second argument requires less discussion than the first. Essentially, he asserts that the FAA’s failure to publish, in the Code of Federal Regulations, after public notice and comment, a rule authorizing the revocation of an airman’s certificate is a violation of the Administrative Procedures Act, 5 U.S.C. §§ 552(a)(1) and 553. Such failure, Hite’s argument goes, constitutes an absolute bar to the FAA’s revocation.
This is not the first time Hite’s counsel has made this argument, either in this circuit, see Rochna v. National Transp. Safety Bd., 929 F.2d 13 (1st Cir.), cert. denied, — U.S. , 112 S.Ct. 305, 116 L.Ed.2d 248 (1991),[5] or others. See Tearney v. National Transp. Safety Bd., 868 F.2d 1451 (5th Cir.), cert. denied, 493 U.S. 937, 110 S.Ct. 333, 107 L.Ed.2d 322 (1989); Komjathy v. National Transp. Safety Bd., 832 F.2d 1294 (D.C.Cir.1987) (per curiam), cert. denied, 486 U.S. 1057, 108 S.Ct. 2825, 100 L.Ed.2d 926 (1988). Each prior assertion has met with rejection. In addition, one district court recently sanctioned Hite’s counsel under Fed.R.Civ.P. Rule 11 for advancing this oft-rejected theory without reasonable “argument that the Second Circuit would receive these arguments with any more favor_” See Knipe v. Skinner, 146 F.R.D. 58, 61 (N.D.N.Y.1993) (finding Rule 11 violation); see also Knipe v. Skinner, No. 91-CV-1338, 1993 WL 89306, 1993 U.S.Dist. Lexis 3702 (N.D.N.Y. March 20, 1993) (assessing sanction at $9,000). As we have been given no reason to depart *21 from this unbroken chain of authority, further discussion of this issue is unnecessary.
The decision of the NTSB is affirmed.
ORDER OF COURT
May 28, 1993.
By a unanimous vote of the panel, appellant’s petition for rehearing is denied. For the purposes of clarification, we note the following.
At page 20 of our original opinion, we described petitioner’s challenge as being directed at the lack of publication of “a rule authorizing the revocation of an airman’s certificate.” In support of rehearing, petitioner asserts that his argument is instead directed at the failure to publish a rule that warns pilots that revocation may result from acts which demonstrate “a lack of qualification, that is ... fail[ure] to demonstrate the “care, judgment, and responsibility required by a certificate holder” (the so:called “compliance disposition” rule).
However, as we noted on page 20 of the panel opinion, “[t]he Board has consistently held that ‘conduct on a single flight, generally in the form of recklessness or gross (or extreme) carelessness, is considered sufficiently egregious to demonstrate a lack of qualifications.’ ” (quoting Administrator v. Wingo, 4 N.T.S.B. 1304, 1305 (1984)). In addition, administrative agencies are generally free to develop standards through adjudication. See NLRB v. Bell Aerospace Co., 416 U.S. 267, 290-95, 94 S.Ct. 1757, 1770-72, 40 L.Ed.2d 134 (1974). Here, the NTSB policy for revocation based on lack of qualification is well established. See Administrator v. Green, 1 N.T.S.B. 267, 270 (1968) (upholding revocation following incident which demonstrated a failure to exercise the degree of care, judgment and responsibility required of a certificate holder; noting that decision was in accordance with previous decisions of the Civil Aeronautics Board-the NTSB’s predecessor agency (citing Sisto v. C.A.B., 179 F.2d 47 (D.C.Cir.1949), aff'g 13 C.A.B. 125 (1948))).

. Hite’s appellate arguments are essentially legal in nature, rather than an attack on the factual findings of the ALJ or Board. Indeed, his challenge to the previous factual findings consists of little more' than highlighting irrelevant inconsistencies in certain testimony. It is not our function, however, to weigh evidence or evaluate credibility. Hill v. National Transp. Safety Bd., 886 F.2d 1275, 1278 (10th Cir.1989). Instead, we "simply determine whether the agency could fairly and reasonably find the facts as it did.” Chritton v. National Transp. Safety Bd., 888 F.2d 854, 856 (D.C.Cir.1989); see also 49 U.S.C. App. § 1486(e) (court bound by factual findings if there is substantial evidentiary support in the record). Our review of the record reveals nothing unreasonable relative to fact finding below. As such,, we sketch the factual outline consistent with the findings of the Board.

. Specifically, Hite was charged with violating FAR 91.9, 14 C.F.R. § 91.9 (1989) (operating an aircraft in a careless or reckless manner); FAR 91.31(a), 14 C.F.R. § 91.31(a) (1989) (operating an aircraft without complying with the operating limitations specified in the approved manual); FAR 135.25(a)(2), 14 C.F.R. 135.25(a)(2) (1989) (operating an aircraft that was not airworthy); and FAR 135.65(b), 14 C.F.R. § 135.- *19 65(b) (1989) (failing, as pilot-in-command, to enter or have entered in the aircraft maintenance log a mechanical irregularity that came to his attention during a flight). A charge of failing to report an accident or flight control malfunction .was dismissed.

. Hite argued that he was unaware of the fact that the plane struck the tarmac; that he loaded the baggage in the front of the plane; and that the misplacement of passengers was their own doing, in that they had already boarded by the time he had arrived. The ALJ resolved these credibility issues adversely to Hite, who has provided us with no reason to disturb the ALJ’s findings. See supra note 1.

. Hite also asserts that the FAA’s later failure to veto Spectrum’s appointment of him as Director of Operations, and the FAA’s decision to issue an Air Taxi Certificate to his company, somehow undermines the conclusion that he lacks an airman’s qualifications. This argument borders on the specious. The FAA revoked Hite’s certificate to fly an aircraft. Whether he is Spectrum’s Director of Operations, or President of Meridien Airlines — to which the taxi certificate was issued — he is still prohibited from flying. In a nutshell, these two FAA decisions are irrelevant to the matter at hand.

. Hite's appellate brief makes no mention of this First Circuit precedent. However, we find that while Rochna addressed a case of suspension, and this case involves revocation, such variance is of no moment. In both cases, Hite relies on the same rationale to attack the FAA’s sanction.