George C. CARRINGTON, Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

No. 9316.

United States Court of Appeals
Fourth Circuit.

Argued April 22, 1964.

Decided Oct. 27, 1964.

George C. Carrington, pro se.

O. D. Ozment, Associate General Counsel, Civil Aeronautics Board (John H. Wanner, General Counsel, Joseph B. Goldman, Deputy General Counsel, Mordecai B. Braunstein, David A. Heymsfeld and John M. Stuhldreher, Attorneys, Civil Aeronautics Board, William H. Orrick, Jr., Asst. Atty. Gen., and Lionel Kestenbaum, Attorney, Department of Justice, on brief), for respondent.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and CRAVEN, District Judge.

HAYNSWORTH, Circuit Judge:

This is a petition to review a decision of the Civil Aeronautics Board sustaining a refusal to issue an airman's medical certificate to the petitioner. His articulate presentation of technical, legal questions is the product of much industry, but, unfortunately, is legally misconceived. We must deny the petition.

Carrington had been denied a second class airman's medical certificate upon a determination that he had "a character or behavior disorder which is sufficiently severe to have repeatedly manifested itself by overt acts." The determination was based upon a psychiatric examination and a long record, which was further amplified in the hearing before the Examiner for the Civil Aeronautics Board. The decision of the Board was supported by a number of psychiatrists, whose conclusions were in accordance with the Board's determination. Carrington attacks the foundation of their opinions and the Board's procedures.

■ It is first contended that the Board proceeded erroneously under § 602 of the Federal Aviation Act,[1] rather than under § 609.[2] The former section prescribes the procedure for review of refusals to issue or renew airman's certificates, while the latter applies to proceedings for review of orders modifying, suspending or revoking existing airman's certificates. The principal difference in their effect is that the burden of proof under the former section is cast upon the applicant while the burden of proof under the latter section is cast upon the Administrator.

This question Carrington presented to the Board in the form of a "Motion for Change of Venue," in which he asked that the appeal be treated not as one to review a denial of his 1962 application but as one from the initial unfavorable "order" of February 10, 1959, when the Administrator first notified Carrington, who then held a third class certificate, that he did not qualify for any certificate.

Carrington, who has had long experience in military and commercial aviation, in 1959 held only a third class airman's medical certificate. That authorized his flying only as a private pilot, but it was a valid certificate for that purpose and would not have expired by its terms until October 8, 1959.

On February 10, 1959, while the third class certificate was in effect, Carrington was notified that he did not qualify for any medical certificate. Carrington contends, of course, that this was a formal order revoking the existing class three certificate, and that any review proceedings must be had under the provisions of § 609.

So far as appears on this record, the "order" of February 10, 1959, was not issued in response to an application by Carrington for a certificate of a higher class. Whether or not it was, however, Carrington has not preserved his rights

---

1. 49 U.S.C.A. § 1422(b).

2. 49 U.S.C.A. § 1429.

under § 609 and his third class certificate has long since expired.

The letter of February 10, 1959, suggested that Carrington select a psychiatrist and submit a complete report of the examination. It informed him that, until a complete psychiatrist's report had been submitted, the Administrator could not consider Carrington qualified as an airman. Carrington, apparently, took no steps to comply with that request. Instead, in April 1959, he applied for a first class certificate, which application was denied on July 22, 1959. Meanwhile, he had undertaken an appeal because the Administrator had not promptly granted the application. That appeal was allowed as an appeal from the subsequent denial of the first class certificate. While that proceeding was pending Carrington was examined on October 7, 1959, and was advised on October 19, 1959, that he was not qualified for a certificate of any class. A hearing in that proceeding was postponed from time to time at Carrington's request, and, on the motion of his attorney, was dismissed on May 19, 1960. Carrington, himself, later undertook to revive those proceedings, but that attempt was denied on June 30, 1960.

Subsequently, Carrington made other applications for airman's certificates and those were denied on October 11, 1960, and March 17, 1961. The last application was made on April 17, 1962, and its denial was the basis for the commencement of these proceedings.

Carrington contends that under § 9(b) of the Administrative Procedure Act,[3] his applications during the currency of his third class medical certificate had the effect of continuing the effectiveness of that certificate beyond its expiration date. That Section does contain a general provision that existing licenses shall not expire until timely applications for renewal shall have been finally determined by the agency. Such final determination was. had long ago, however, and any dispute as to the effect of the letter of February 10, 1959, had long since become moot.

If the letter of February 10, 1959, is. treated as showing the pendency of an. application for renewal of the existing third class certificate,[4] or if his application of April 1959 for a first class certificate be construed as an application for a renewal of the existing third class certificate, those applications were effectively denied by the Administrator on July 22, 1959, and the determination became final, at the latest, when Carrington's attempted appeal was dismissed on June 30, 1960, following the earlier dismissal on May 19, 1960. If the pendency of those proceedings had the effect of extending the expiration of the third class certificate beyond October 1959,[5] it could not have extended the effective date of the third class certificate beyond the final order of June 30, 1960, dismissing the appeal.

Each of Carrington's subsequent applications for medical certificates could not affect the finality of the orders of May 19 and June 30, 1960. His last application was filed on April 17, 1962, long after expiration of the old third class medical certificate.

■ Moreover, whatever may be said to have been the effect of the letter of February 10, 1959, this and all other formal proceedings before the Board have been upon applications by Carrington for the issuance of new certificates. Denials of all such applications are reviewable under § 602 rather than under § 609. He might have had a right in.1959 to seek a review under § 609 of the letter of February 10, 1959, but he did not avail himself of it,[6] and the right, if it ever existed, has long since been lost.

3. 5 U.S.C.A. § 1008(b).

4. Such an assumption would be inconsistent with Carrington's contention that it was a revocation of existing authority as the result of an inquiry initiated by the Administrator.

5. We need not consider whether airman's. certificates are excepted licenses under the Public Safety provisions of § 9(b), of the Administrative Procedure Act.

6. If his appeal to the Board in 1959 be regarded as an appeal from the "order"

■ Carrington attacks the Board's determination of his disqualification because the psychiatrists and the Board relied in part, at least, upon documents and information which Carrington describes as hearsay and which he contends were incompetent.

During Carrington's long service as a pilot with the Navy, the Marine Corps, the Air Force and three air lines, many reports and letters were prepared relative to his qualifications. Some of them were commendatory, indicating that he was a pilot of skill and, while in the armed forces, of courage, but many of them repetitively disclosed difficulties in working with others. They disclosed, for instance, that each of the three air lines by which he had been employed terminated his services because of difficulties in working with others. Military records disclose similar difficulties. According to these reports, he repeatedly displayed an inability to accept criticism, was much inclined to be critical of others, and was highly aggressive in the assertion of his own notions.

Generally, Carrington does not deny the occurrence of the many instances detailed in these reports and documents. He does claim that the incidents, or most of them, were instigated by someone else, or that someone else, rather than he, was blameworthy. Criticism of him was not accepted, he says, because it was unmerited, but his criticisms of others were aggressively pursued because they highly deserved it.

The examining psychiatrists and the Board had these documents and questioned Carrington about them. They knew what the documents disclosed and they had Carrington's own version of the events the reports detailed. Their conclusion that Carrington exhibited paranoid tendencies and obsessive-compulsive traits, manifested by repeated overt acts, was not stated by them to have been dependent upon a resolution of any question as to the truth of any one or more of the prior occurrences. Rather, it was based upon a finding that no one could be involved in such a succession of consistently similar difficulties, unless his own personality was their principal source.

Many of the documents, properly authenticated and proven, were readily admissible in evidence for any purpose. If some of them might properly have been described as inadmissible hearsay, they were not improperly used by the psychiatrists for the limited purpose for which they were employed, which was simply to establish the admitted historical fact that while serving in three armed services and working for three separate air lines, Carrington's effectiveness as a pilot had been gravely impaired by controversy, which, in several instances, had occasioned a termination of his services.

In many fields of medicine, doctors are ill-prepared to reach a diagnosis unless they have an adequate history. This is particularly true of psychiatrists, and personality difficulties of the sort with which Carrington has been found to suffer, readily revealed during performance under stress, might never be manifested under the immediate view and within the immediate hearing of the psychiatrists. The documents they considered, in the light of Carrington's explanation of them, were peculiarly appropriate to supply that history, for, with his explanation, they provided an objective basis for a conclusion that Carrington does have an impaired capacity as a pilot to work harmoniously with others. The doctors' use of these materials as a background for diagnosis thus cannot be said to have invalidated their judgments or made their conclusions inadmissible, as Carrington contends. Rather, their use of these materials supports their conclusions and was properly regarded by the Board as lending weight to them.[7]

of February 10, 1959, rather than from the denial of his April 1959 application, his right of review, if any, was exercised by him and finally terminated by entry of the final, formal orders of May 19, 1960, and June 30, 1960.

7. See Jenkins v. United States, 113 U.S. App.D.C. 300, 307 F.2d 637.

Finally, Carrington attacks the validity of the Administrator's regulations. His contentions that they are unconstitutionally vague and otherwise invalid are so lacking in substance, however, that we need not consider whether or not such questions are properly before us.

We find no infirmity in the Board's order sustaining the denial of an airman's medical certificate for Carrington. The petition for review will be denied.

Petition denied.