John DOE, Petitioner,

v.

**DEPARTMENT OF TRANSPORTA-
TION, FEDERAL AVIATION ADMIN-
ISTRATION; William F. McKee, Ad-
ministrator, Federal Aviation Adminis-
tration, and National Transportation
Safety Board (formerly Civil Aeronau-
tics Board), Respondent.**

No. 19183.

United States Court of Appeals
Eighth Circuit.

July 16, 1969.

Joseph R. Schlozman, Kansas City,
Mo., for petitioner and filed brief and
reply brief.

Arthur R. Schor, Atty., National
Transportation Safety Board, Washing-
ton, D. C., for respondent; Nathaniel H.
Goodrich, Gen. Counsel and John E.

Marsh, Atty., Federal Aviation Administration, and Edwin L. Weisl, Jr., Asst. Atty. Gen., and Morton Hollander, Chief, Appellate Section, Dept. of Justice, Washington, D. C., on the brief with Arthur R. Schor.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and LAY, Circuit Judges.

BLACKMUN, Circuit Judge.

The petitioner, born May 20, 1934, and for present purposes given the pseudonym of John Doe, petitions for review of an order of the National Transportation Safety Board (successor to the Civil Aeronautics Board). That order affirmed a trial examiner's decision and, specifically, the denial to the petitioner, by the Administrator of the Federal Aviation Administration, of an airman medical certificate.

The administrative remedies have been exhausted and the petition for review is appropriately here under § 1006 as amended, of the Federal Aviation Act of 1958, 49 U.S.C. § 1486.

The medical certificate desired by the petitioner is one of the third class (private pilot). Eligibility for this is prescribed by Part 67.17 of the Federal Aviation Regulations, 14 C.F.R. § 67.17. This reads in pertinent part as follows:

"*Third-class medical certificate.*

"(a) To be eligible for a third-class medical certificate, an applicant must meet the requirements of paragraphs (b) through (f) of this section.

\*  \*  \*  \*  \*  \*

"(d) Nervous system:

"(1) No established medical history or clinical diagnosis of any of the following—

"(i) A character or behavior disorder that is severe enough to have repeatedly manifested itself by overt acts."

It is not now disputed that the petitioner has had homosexual episodes in the past. Neither is it disputed that he was convicted of the crime of sodomy in a Texas state court in June 1965 for an act performed July 29, 1964, with a male under the age of puberty.

The petitioner, however, urges upon us two propositions. The first is that, under the regulations quoted above, a character or behavior disorder, to be disqualifying, must be one existing at the time of the application or of the hearing, rather than at some time in the remote past, and that the evidence compels a finding that the applicant does not now suffer from such a disorder. The second is that, in any event, the findings as to the disqualifying disorder are not supported by substantial evidence.

The position of the Administration and the Board is that the regulation requires only an established medical history or clinical diagnosis of a character or behavior disorder severe enough to have repeatedly manifested itself by overt acts; that this applicant does have an established medical history and clinical diagnosis of that kind; that it is not necessary that the disorder be currently demonstrated, that is, at the time of the application or of the hearing; that, as a consequence, the applicant does not meet the standard prescribed by the regulation; and that he is disqualified from holding an airman medical certificate of any class.

*The petitioner's testimony.* The petitioner took the stand at the administrative hearing. He testified that since July 29, 1964, he has not had any type of homosexual activity; that at first he pleaded guilty "to this offense" (the Texas sodomy charge); that he did not force anyone to have homosexual relations with him; that at the present time he has no desire for such; that he had relations with women both before and after the conviction; that he sought help and was given advice after the conviction; that he started to fly on September 15, 1965; and that he has a fiancee. On cross examination he stated that in the Texas proceeding there was a change of his plea from guilty to not guilty, and an ensuing trial; that he had owned motorcycles; and that he was

cited for speeding and an accident in 1956 and paid a fine.

*The statute and the genesis of the regulation.* The governing statute is the Federal Aviation Act of 1958, Pub.L. 85–726, 72 Stat. 731, as amended. Under it the Administrator of the Federal Aviation Administration "is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce * * *." Section 601(a), 49 U.S.C. § 1421(a). Specifically, he is empowered to issue an airman certificate to any applicant who the Administrator finds, after investigation, "possesses proper qualifications for, and is physically able to perform the duties pertaining to, the position for which the airman certificate is sought". The certificate is issued upon such conditions "as the Administrator may determine to be necessary to assure safety in air commerce". Section 602(a) and (b), 49 U. S.C. § 1422(a) and (b). The Administrator is also empowered to issue such regulations as he shall deem necessary for the exercise and performance of his powers. Section 313(a), 49 U.S.C. § 1354(a).

Part 67 of the Federal Aviation Regulations was codified August 5, 1962. It had been preceded by Part 29 of the Civil Air Regulations. The portion, which is pertinent here, was promulgated by amendment effective October 15, 1959. 24 Fed.Reg. 7309. It resulted from a study, made through congressionally appropriated funds, and recommendations by the Flight Safety Foundation, Inc., a nonprofit organization. See the Preamble to Part 29 of the Civil Air Regulations, 24 Fed.Reg. 7309. The Foundation, after consultation with recognized psychiatrists familiar with the requirements of aviation, recommended that persons "with a history of an established diagnosis of psychosis, severe psychoneurosis, severe personality abnormality, epilepsy, chronic alcoholism or drug addiction" be disqualified for any class of medical certificate. The recommendation was "based on the medical fact that none of these * * * conditions can be so precisely studied in the individual as to provide assurance that they will not interfere with the safe piloting of aircraft." It went on to say, "In reality, the likelihood of occurrence of partially or totally incapacitating states directly attributable to these conditions is so great, and the ability to provide acceptable medical assurance of non-occurrence of such states in any given individual is so inadequate, that these conditions existing in airmen constitute a definite hazard to safety in flight."

The Foundation's report classified disqualifying psychiatric disorders into broad categories. Among them was "personality pattern disturbance." As to this, the preamble recites:

"Persons with personality pattern disturbances suffer from severe personality abnormalities in the clinical sense. Such disturbances are classified by the Foundation to include pathological personalities, immaturity reactions, chronic alcoholism and drug addiction. * * *

"Pathological personalities and persons with immaturity reactions suffer from defects in the development or structure of the personality and in the pattern of behavior. Medically, such defects are termed 'character and behavior disorders' and ordinarily are not subject to eradication by treatment. One type of these disorders is further characterized by persistent non-conformity with respect to the accepted ethical, moral or social codes of behavior, usually resulting in abnormal conflict with other persons, groups of persons or disciplinary and regulatory systems. Where there has been repeated evidence of such non-conformity, persons suffering from these disorders are not considered capable of functioning adequately under the controls necessary for the safe performance of airman duties.

"The amended standards therefore disqualify such persons when the existence of the character or behavior disorder has been determined by established medical history or clinical

diagnosis and, in addition, it has repeatedly manifested itself in non-conformity to accepted ethical, moral or social codes of behavior."

We note:

■ 1. The Act has an emphasis on safety and we have so recognized. Pike v. CAB, 303 F.2d 353, 355–356 (8 Cir. 1962). See Nadiak v. CAB, 305 F.2d 588, 590–591 n. 1 (5 Cir.1962), cert. denied, 372 U.S. 913, 83 S.Ct. 729, 9 L.Ed. 2d 722.

■ 2. The applicant has the burden of proof of demonstrating error in the denial of the certificate he requests under § 602, 49 U.S.C. § 1422. Carrington v. CAB, 337 F.2d 913, 914 (4 Cir. 1964), cert. denied, 381 U.S. 927, 85 S. Ct. 1565, 14 L.Ed.2d 686.

■ 3. Our standard on review is whether the findings of fact are supported by substantial evidence. If so, the Board's findings are conclusive upon us. Section 1006(e) of the Act, 49 U.S. C. § 1486(e). Nebraska Dep't of Aeronautics v. CAB, 298 F.2d 286, 293 (8 Cir.1962); Specht v. CAB, 254 F.2d 905, 913, 78 A.L.R.2d 1135 (8 Cir.1958); City of Pontiac v. CAB, 361 F.2d 810, 814 (6 Cir.1966); Sabinske v. CAB, 346 F.2d 142, 144 (5 Cir.1965); Nadiak v. CAB, supra, 305 F.2d at 592. And we have construed essentially identical language in the Social Security Act, 42 U. S.C. § 405(g), as requiring more than a mere scintilla of evidence, namely, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and that it be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498, 501 (8 Cir.1963); Brasher v. Celebrezze, 340 F.2d 413, 414 (8 Cir. 1965); Easttam v. Secretary, 364 F.2d 509, 511 (8 Cir.1966).

■ 4. The weight and credibility of testimony is for the Board. Specht v. CAB, supra, 254 F.2d at 913; Nadiak v. CAB, supra, 305 F.2d at 592.

■ 5. The regulation in question has withstood constitutional challenge based on alleged vagueness. Doe v. CAB, 356 F.2d 699, 701 (10 Cir.1966); Greve v. CAB, 378 F.2d 651, 656 (9 Cir. 1967). See Carrington v. CAB, supra, 337 F.2d at 917.

With all this in mind we turn to the propositions advanced here by the petitioner.

*The reach of the regulation.* Section 67.11 flatly provides that an applicant who meets the prescribed medical standards is entitled to an appropriate medical certificate. It is claimed that the Board misjudged the issue here and failed to focus on the essential question whether at the time of the application or of the hearing, rather than some years before, the applicant suffered from the disqualifying mental abnormality. Emphasis is laid on the word "is" in the phrase "character or behavior disorder that is severe enough". It is said, also, that the phrase "clinical diagnosis" as used in the regulations contemplates a mental examination of the applicant under direct observation; that a 9-year-old medical history cannot permit the inference of a presently existing disqualifying condition; and that where current medical examination fails to reveal a disqualifying condition, the past medical history cannot be the basis of a disqualification. The applicant emphasizes that Dr. James F. Hooke, a clinical psychologist and witness for the Administrator, examined the applicant in April 1966 and could not positively diagnose a then existing character or behavior disorder, and that Dr. Nathan Greenbaum, a qualified clinical psychologist who testified for the applicant, examined him in October 1966 and found no mental disease or disorder. Finally, it is said that overt acts, no matter how seemingly immoral, distasteful or otherwise socially unacceptable, are irrelevant in the absence of a firm clinical diagnosis showing an existing abnormality of the mind; the regulations, it is claimed, deal with physical or mental impairments and not with moral behavior.

This argument, in its way, is somewhat ingenious, but it does not convince us.

■ It is evident from the language, set forth above, of the Preamble to Part 29 of the Civil Air Regulations that the Administrator was impressed with the fact that character and behavior disorders "ordinarily are not subject to eradication by treatment" and by the tendency of the disorder repeatedly to evidence itself. We detect no requirement that the disorder, to be disqualifying under the regulation, must be currently manifest at the time of the application or of the administrative hearing. The Board itself, in a series of decisions, has not intimated that the disorder be currently discernible. The earlier established medical history or clinical diagnosis suffices. Administrator v. Carrington, 39 C.A.B. 922 (1963), aff'd 337 F.2d 913 (4 Cir.1964) (4 years before); Administrator v. Deonier, Order S–1360 (1966) (22 years); Administrator v. Cross, Orders S–1359 and S–1358 (1966) (9 years); Administrator v. Clinton, 33 C.A.B. 1140 (1961) (6 years); Petition of Berard, Order S–1328 (1965) (6 years); Administrator v. Miller, Order S–1427 (1967) (6 years); Administrator v. Doe, Order EA–18 (1967) (6 years); Administrator v. Player, 31 C.A.B. 1161 (1960) (2 years); Administrator v. Cloney, 38 C.A.B. 1208 (1963) (2 years); Administrator v. Fisher, Orders EA–8 and EA–9 (1967) (3 years); Administrator v. Crowl, Order S–1257 (1964) (6 years). This consistent interpretation brings into application the rule that construction of a statute or regulation by those charged with administration is not to be overruled except for weighty reasons. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948); Udall v. Tallman, 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Nebraska Dep't of Aeronautics v. CAB, supra, 298 F.2d at 293; United States v. Ekberg, 291 F.2d 913, 921 (8 Cir.1961), cert. denied, 368 U.S. 920, 82 S.Ct. 242, 7 L.Ed.2d 135; Review Committee, Venue VII, Commodity Stabilization Service, U. S. Dept. of Agriculture v. Willey, 275 F.2d 264, 272 (8 Cir.1960), cert. denied, 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1522. No such weighty reasons are present here.

There is no room, either, for one to claim that this disqualification is arbitrary and opens the door to abuse. Under § 601(c) of the Act, 49 U.S.C. § 1421(c), and Part 11 of the Regulations, 14 C.F.R. Part 11, an airman may obtain an exemption from the medical standards if he shows that his present physical or mental condition is such that he can operate an aircraft safely.

We thus do not accept the interpretation of the regulations proposed by the petitioner.

*The sufficiency of the evidence.* The applicant urges here, naturally enough, that his expert, Doctor Greenbaum, testified that he had examined the applicant in October 1966 and concluded that he did not have a character or behavior disorder severe enough to have repeatedly manifested itself, within the technical meaning of the pertinent regulation; that in reaching this conclusion he took into account the applicant's Texas sodomy conviction of June 1965; that he found "no disease or abnormality whatsoever" in the applicant; that the applicant's activity did not indicate a propensity to break rules; that there is nothing "in his makeup that would or should interfere with his ability to perform safely as a pilot"; and that there was nothing in certain documents, pertaining to the petitioner and admitted into evidence, namely, the army intake interview, the army psychiatrist's certificate, and the military record of previous convictions, which would change his mind.

The applicant further stresses the testimony of Doctor Hooke, the psychologist called by the Administrator. Doctor Hooke stated that he examined the applicant in April and May 1966; that looking at the applicant's profile of the MMPI test, he saw "a couple of things that would incline me to say that a character or behavior disorder could not be ruled out", but that he did "not see any-

thing in any of the tests that would allow me to make a positive diagnosis"; and that after reviewing the records he would prefer not to make a judgment that such a person would be suffering from a character or behavior disorder and "I would have to say that such a person could be, but I don't believe I would want to make the diagnosis."

The applicant suggests that the Administrator is bound by this testimony and that Doctor Hooke's statement on the stand corroborates Doctor Greenbaum's and reinforces the positive diagnosis of no character or behavior disorder.

There is, however, additional evidence and thus another side to the case. Introduced at the hearing were a number of documents concerning the petitioner:

1. The certificate dated May 2, 1957, of Major John C. Marchesi, the examining army psychiatrist. This recites the petitioner's story of homosexual episodes for 10 years, of their increasing frequency, of his theft of government property, and of his then being investigated for that theft. It contains the psychiatrist's conclusion that the petitioner presented "a fairly typical picture of a psychopathic personality disorder" and the diagnosis of "anti-social personality", with a recommendation that he be separated from the service. (He was given an undesirable discharge in November 1957.)

2. The army "intake interview" of April 25, 1957, by a social worker-interviewer. This recites a similar story by the applicant with the added details that his contacts were between the ages of 15 and 19 years and that the applicant "prefers being the aggressive one." The interviewer received the impression of "a sadistic, manipulative, egocentric, psychopathic character", and "[p]erhaps a deviate in the true sense of the word" but whose confession of homosexuality "seems to be an effort to shift attention from the possible larceny charge he is facing".

3. The army record of convictions in June and August 1957 for, respectively, wrongful appropriation of government property and operation of a motorcycle in a reckless manner.

4. The record of several traffic violations in Kansas City, Missouri, after the petitioner's discharge from the army. These include reckless driving, causing an accident, and speeding.

5. A statement dated August 1, 1964, signed by the applicant and given in connection with the Texas sodomy charge. This recites homosexual activity with a male under the age of puberty on a number of occasions, the last of which was July 29, 1964, and concedes "this kind of trouble" since 1951.

6. The report dated March 13, 1966, of a mental examination interview at the University of Kansas Medical Center made at the request of the Administrator. This contains the applicant's story of homosexual activity since age 14, the Texas conviction, and a present desire to continue homosexual activity. The diagnosis was "sociopathic personality disturbance, dysocial type".

Further, Dr. Herbert C. Haines, a board certified psychiatrist and a flight surgeon for 6 years in the United States Air Force, testified for the Administrator. Although Doctor Haines had not personally interviewed the petitioner, he had examined the records introduced at the hearing and had heard the medical testimony. He first testified that, in his opinion, the applicant "probably has a character or behavior disorder"; that the army psychiatrist's 1957 diagnosis of "anti-social personality" is one of a character or behavior disorder; that he would "probably agree" with that diagnosis; that the army doctor's term "personality disorder" includes "sociopathic personality disturbance" and "anti-social reaction" previously classified as constitutional psychopathic and psychopathic personality; and that he did not feel that homosexuality in and of itself was necessarily a hazard to flight safety. However, he went on to testify that, in the light of the other documents in evidence and made available to him, he "moved away from the probability posi-

tion" and he was now making a diagnosis of a character or behavior disorder; that the various traffic violations and the sodomy conviction changed his diagnosis from "probably to positively"; and that any absence of a homosexual relationship since July 29, 1964, would not be significant because the episode on that date occurred when the applicant was 30 years of age, some 7 years after he had left the army, and involved a person prior to puberty.

The presence in the record of this additional material makes it clear, we feel, and certainly persuades us, that there is sufficient and substantial evidence to support the administrative findings. It is true, of course, that Doctor Haines did not conduct a personal examination of the applicant. But he had reviewed the medical records and had heard the testimony. All this revealed deviation and anti-social activity in the past. Whether one accepts or denies that homosexuality per se has no effect upon the safe performance of airman duty, we have here evidence of homosexuality initiated by the applicant, of partners below the age of puberty, and of a pattern of disregard for other persons. There were repeated overt acts in the past. Doctor Haines was positive in his opinion that the applicant suffered from a character or behavior disorder severe enough to have repeatedly manifested itself by overt acts and thus his opinion fell flatly within the disqualifying regulation. We recognize that Doctor Greenbaum testified that, in his opinion, the applicant's record did not indicate a propensity to break rules. We cannot say, however, that in the face of this record this psychologist's opinion must be accepted; one can certainly argue that it is palpably incorrect. Further, he conceded that the petitioner's conduct would be consistent with a personality disorder. And Doctor Greenbaum was not aware of the army's clinical diagnosis. It is also true that Doctor Hooke testified that he could not make a positive diagnosis of character or behavior disorder. His diagnosis, however, was based only on his own testing and not on the applicant's personal history. Yet he said that some of the test results "would incline me to say that a character or behavior disorder could not be ruled out." Doctor Hooke, thus, was neither pro nor con on the basic issue. And in the doctor's written psychological evaluation of the applicant he stated,

"In summary, while there is no evidence suggestive of serious emotional disturbance, there is evidence of strong self-punishing needs which find expression in impulsive acting out. To this extent, it may be said that his judgment is defective. My own lack of familiarity with the judgmental demands on a pilot makes it difficult to say whether his defects in judgment would prevent him from being a safe pilot."

■ We thus cannot regard the testimony of either Doctor Greenbaum or Doctor Hooke as contrary to, or inconsistent with, Doctor Haines' evaluation and the administrative findings. The findings are not unreasonable and they have substantial support in the record.

■ When a case is not in the criminal area one is naturally cautious for fear of punishing or depriving because of past acts. The regulation of air commerce, however, and the enforcement of the safety features of that regulation are not punishment to the extent they deprive. The justification is the general safety not only of the applicant but of the public. The rights and needed protection of that public are the proper subject of concern. Such considerations are involved in the petitioner's case. Until medical knowledge leads us with certainty in another direction, we must agree that the denial of a medical certificate to this petitioner is not improper.

The Board's order is affirmed.