Ronald S. DICK, Plaintiff,

v.

UNITED STATES of America, Melvin R. Laird, Defendants.

Civ. A. No. 2671–69.

United States District Court, District of Columbia.

March 27, 1972.

Donald H. Dalton, Washington, D. C., for plaintiff.

Benjamin C. Flannagan, and Thaddeus B. Hodgdon, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

GASCH, District Judge.

This matter came on for consideration of motions by plaintiff Dr. Ronald Dick, for summary judgment and by defendant United States to dismiss and by the Secretary of Defense for summary judgment. Briefly stated, plaintiff seeks review of a decision by the Secretary to deny plaintiff's application for a secret security clearance and to revoke his confidential clearance pursuant to the procedures established by the Industrial Personnel Security Clearance Program, Department of Defense Directive 5220.6, 32 C.F.R. § 155 (1970).

When Dr. Dick submitted his application for a secret clearance in 1967, he was referred to Dr. Louis Linn, a psychiatric consultant to the Department of Defense, for evaluation. After an interview of approximately one and a half hours, Dr. Linn concluded that Dr. Dick had "a Personality Pattern Disturbance (Paranoid Personality)" which was of a continuing nature and which constituted a significant defect in his judgment and reliability. Accordingly, he recommended that the secret clearance be withheld on psychiatric grounds. Dr. Dick was then furnished a Statement of Reasons by the Screening Board and was advised of his right to a hearing before an Examiner as set forth in 32 C. F.R. § 155.7(a) and (b).

A hearing was subsequently conducted before an Examiner at which Dr. Linn testified concerning his conclusion that Dr. Dick was suffering from a paranoid personality. Dr. David Trachtenberg, a licensed physician with ten years' experience in the practice of psychiatry, testified that based on three interviews he had concluded that Dr. Dick suffered from no mental condition which would render him incompetent to handle secret material nor did he suffer from a paranoid personality. The regulations permit an applicant to call witnesses and present evidence in his behalf at the hearing.

The Examiner's Determination of March 12, 1969, concluded that on the basis of all the information of record it was not clearly consistent with the national interest to grant Dr. Dick a security clearance at any level. He stated that he had rejected Dr. Trachtenberg's testimony because, among other reasons,

. . . cross-examination of the Doctor revealed that even though he had seen the Applicant on three occasions, as compared to Dr. Linn's one interview, he was woefully lacking in the basic facts concerning the Applicant's behavioral background during the past eleven years.

The conclusion of the Examiner was subsequently affirmed by the Appeal Board.

In support of its motion for summary judgment, the government contends that the scope of judicial review in this type of case is limited to a determination of whether the plaintiff received a procedurally fair hearing and whether there is sufficient evidence in the record to support the Examiner's conclusion and asserts that those standards have been met.

The starting point for consideration of the type of hearing to be afforded in a security clearance case is provided by Greene v. McElroy, 360 U.S. 474, 79 S. Ct. 1400, 3 L.Ed.2d 1377 (1959). The Supreme Court in *Greene*, while not reaching the constitutional issues involved, concluded that in the absence of express executive or legislative authority, a hearing which did not provide the safeguards of confrontation and cross-examination did not comport with our traditional ideas of fair procedure. The Court has cautioned, however, that "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation" and that "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action." Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–1749, 6 L. Ed.2d 1230 (1961).

There is no contention that Dr. Dick was denied any procedural rights such as confrontation and cross-examination of witnesses which are afforded him by the regulations. However, at the judicial hearing counsel for the government was questioned as to the source of the factual material concerning Dr. Dick's background which had been explored by Dr. Linn and which consequently led the Hearing Examiner to prefer Dr. Linn's evaluation. Counsel advised the Court that this information had been furnished to Dr. Linn from Department of Defense files and contained summaries of previous examinations and statements from other people who had had contact with Dr. Dick. This response is supported by testimony of Dr. Linn before the Examiner. (Hearing Transcript at 15). While there is no express indication that Dr. Linn relied on this material in forming his conclusion, neither is there an indication that he did not. The conclusion is virtually inescapable that he did so rely, particularly in view of the Examiner's favorable reaction to Dr. Linn's greater awareness of basic facts of Dr. Dick's behavioral background. The record is likewise silent as to whether Dr. Dick, his attorney, or his psychiatrist were permitted to view this material and counsel for the government conceded that they were not.

██ Access to evidentiary material in the possession of an administrative body which will be considered and relied upon by that body in making its ultimate determination should ordinarily be afforded to the individual whose interest is at stake. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970). Conversely, the full panoply of due process safeguards need not necessarily be afforded to the individual during the investigative, as opposed to the adjudicative, phase of an administrative proceeding. Adams v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230 (1969). Had the government, in the instant case, attempted to introduce Dr. Dick's background file into evidence at the hearing before the Examiner, the applicant would ordinarily have been given access to that material, subject to certain ex-

ceptions. 32 C.F.R. § 155.7(d). The difficulty presented by this case is that it did not. Rather, it made that material available to a psychiatrist who testified as an expert witness at the hearing and whose testimony was preferred by the Examiner in part because of the psychiatrist's greater familiarity with the details of Dr. Dick's background.

■ It is well established that the opinion testimony of a psychiatrist is admissible even though it may be based in part upon the reports of others which are not in evidence but upon which the psychiatrist customarily relies in the practice of his profession. Jenkins v. United States, 113 U.S.App.D.C. 300, 307 F.2d 637 (1962). There can be no doubt but that information concerning an individual's background and prior behavior is relevant, material, and perhaps even crucial to the psychiatrist's evaluation and diagnosis. As the Fourth Circuit has noted:

> In many fields of medicine, doctors are ill-prepared to reach a diagnosis unless they have an adequate history. This is particularly true of psychiatrists, and personality difficulties of the sort with which Carrington has been found to suffer, readily revealed during performance under stress, might never be manifested under the immediate view and within the immediate hearing of the psychiatrists.

Carrington v. Civil Aeronautics Board, 337 F.2d 913, 916 (4th Cir. 1964).

Our Court of Appeals has cautioned as to the difficulties and dangers inherent in confronting the trier of fact with only the conclusory definitions and labels of psychiatric testimony without corresponding exposure to the significant underlying information upon which the conclusion is based. Washington v. United States, 129 U.S.App.D.C. 29, 390 F.2d 444 (1967).

■ While these considerations lend some support to the government's contention that there was a rational basis for the Examiner's determination, they also support the conclusion that the ma-

terial should have been made available to the applicant. Access to this information might have enabled the applicant to rebut the validity of some of the details contained in the file and would have permitted the psychiatrist who testified in his behalf to explore more thoroughly the underlying details and to explain his interpretation of them as they related to his conclusions.

As our Court of Appeals observed in United States v. Schappel, 445 F.2d 716, 721 (D.C., 1971), it would be intolerable automatically to accept the testimony of a government psychiatrist simply because he had greater opportunity to observe one committed to a governmental hospital than the private psychiatrist. Here, basic fundamental fairness requires that the government make available to plaintiff's psychiatric witness the same material made available to its own psychiatrist. This result is required since the Hearing Examiner accepted the conclusion of the government's psychiatrist because of the greater depth of his factual information.

■ Although plaintiff seeks an order restoring his revoked clearance and awarding the higher clearance for which he had applied, the proper course where procedural defects in the administrative process have been alleged and found is to remand for further proceedings. McNamara v. Remenyi, 391 F.2d 128 (9th Cir. 1968). Accordingly, the Court concludes that the matter must be returned to the agency for further proceedings in which it must either make the file available to the applicant and to the psychiatrist who will testify in his behalf or invoke the procedures set forth in section 155.7(d) if it deems them to be applicable and appropriate. The considerations previously discussed respecting psychiatric testimony argue strongly in favor of disclosure unless there are compelling reasons to the contrary.

■ One additional point warrants consideration. At the hearing Dr. Linn testified that when he asked Dr. Dick about his religious affiliations, his response was "rather obscure," "measured

something unconventional," and was "therefore in line with the general theme that I was trying to develop in the report that Dr. Dick's way of thinking, acting and responding to a situation was not the normal, expected response." (Hearing Transcript at 31.) Obviously the function of an expert witness, particularly one for the government, is to report with objectivity his findings, not to support his preconceived notions. Section 155.4 of the regulations sets forth the policy and procedures to be followed in questioning applicants at all stages of the administrative process and in subsection (c) expressly precludes questions directed to the applicant's religious opinions or beliefs. Since the posing of such questions is prohibited, the psychiatrist should not have asked these questions in his interview with Dr. Dick nor should testimony have been received from him thereon or given consideration in the administrative record. Here, it appears that the government has ignored the basic principles set forth by the Supreme Court in Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). Even if the regulations were silent on this subject, which they are not, the probing of one's religious beliefs and the drawing of adverse inferences therefrom violates First Amendment principles.

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us.*

The complaint also contains a claim for reimbursement of lost wages which the government has moved to dismiss on the ground that plaintiff has failed to exhaust his administrative remedies. In view of the disposition which the Court has made of the security clearance claim, further consideration of the reimbursement claim would be premature.

Accordingly, the case is remanded for further proceedings not inconsistent with this opinion.

So ordered.

---

* Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943).